# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 08-340-UNA |
| JANAM TECHNOLOGIES LLC, a Delaware limited liability company, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) | |

## PLAINTIFF SYMBOL TECHNOLOGIES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

Richard L. Horwitz (#2246)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P. O. Box 951
Wilmington, Delaware  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Plaintiff*
*Symbol Technologies, Inc.*

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Arlene L. Chow
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York  10022
(212) 918-3000

Dated:  June 18, 2008
870306 / 33146

TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ....................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ..................................................3

STATEMENT OF FACTS ..........................................................................................3

I.    Symbol and the Patents-In-Suit ........................................................................3

      A.    U.S. Patent No. 6,714,969 Claims the Internet Web Browser Feature.......................4

      B.    U.S. Patent No. 5,835,366 Claims the Backup Battery with Boost
            Circuit Feature ...........................................................................................5

      C.    U.S. Patent No. 5,334,821 Claims the Dual Wireless Radio Feature.........................5

II.   Janam and the Infringing Devices ....................................................................6

ARGUMENT ..............................................................................................................8

I.    Symbol Is Likely to Be Successful on the Merits of Its Patent Infringement
      Claims Against Janam ......................................................................................8

      A.    The Law of Patent Infringement...............................................................9

      B.    Janam Infringes U.S. Patent No. 6,714,969............................................11

            1.    Claim Construction.........................................................................11

            2.    Janam's XM Series Literally Infringes Claim 1 of the '969
                  Patent ............................................................................................12

      C.    Janam Infringes Claim 1 of U.S. Patent No. 5,334,821............................14

            1.    Claim Construction.........................................................................14

            2.    Janam's XM Series Literally Infringes Claim 1 of the '821
                  Patent ............................................................................................15

      D.    Janam Infringes Claim 1 of U.S. Patent No. 5,835,366............................18

            1.    Claim Construction.........................................................................18

            2.    Janam's XM Series Literally Infringes Claim 1 of the '366
                  Patent ............................................................................................18

E.  Janam's XM Series Infringes The Patents-In-Suit Under the Doctrine Of Equivalents ...................................................................................................20

F.  Symbol is Likely to Succeed on Any Challenge to the Validity or Enforceability of the Patents-In-Suit ..........................................................21

1.  Secondary Considerations of Non-Obviousness – Such as Long-Felt  Need and Commercial Success – Support Validity of the Patents-in- Suit ........................................................................22

II.  Symbol Will Be Irreparably Harmed by Janam's Continued Patent Infringement Unless Symbol Is Granted Preliminary Injunctive Relief ................................23

A.  Due to Market Entry of Janam's Infringing Windows OS-Based Devices, Symbol Faces Irreparable Price Erosion........................................24

III.  The Balance of Hardships Tips In Favor of Symbol .............................................27

IV.  The Public Interest Favors Preliminary Injunctive Relief......................................29

CONCLUSION.............................................................................................................30

TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs. v. Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007)...............................................................................23

*AquaTex Indus., Inc. v. Techniche Solutions*,
  419 F.3d 1374 (Fed. Cir. 2005)...............................................................................11

*Belgium v. U.S.*,
  452 F.3d 1289 (Fed. Cir. 2006).................................................................................8

*Bio-Technology General Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996).................................................................................23

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
  110 F.3d 1573 (Fed. Cir. 1997)...............................................................................23

*Graver Tank & Mfg. Co. v. Linde Air Products Co.*,
  339 U.S. 605 (1950)...........................................................................................10, 11

*Hughes Aircraft Co. v. U.S.*,
  717 F.2d 1351 (Fed. Cir. 1983)...............................................................................10

*Hybritech Inc. v. Abbott Labs.*,
  849 F.2d 1446 (Fed. Cir. 1988).........................................................................27, 29

*Johnson Worldwide Assocs. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999).................................................................................10

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995)...................................................................................10

*Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004)............................................................................9, 10

*Oakley, Inc. v. Sunglass Hut Int'l*,
  316 F.3d 1331 (Fed. Cir. 2003)...............................................................................23

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
  998 F.2d 985 (Fed. Cir. 1993).................................................................................29

## Table of Authorities Con't

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)..............................................................10, 11, 15, 18

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
 75 F.3d 1558 (Fed. Cir. 1996)..............................................................................29

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
 237 F.3d 1359, 1363 (Fed. Cir. 2001)........................................................21, 23, 25

*Sanofi-Synthelabo v. Apotex, Inc.*,
 470 F.3d 1368 (Fed. Cir. 2006).........................................................8, 23, 24, 27

*Vanderlande Industries Nederland BV v. I.T.C.*,
 366 F.3d 1311 (Fed. Cir. 2004)...........................................................................10

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996).........................................................................9, 10

*Windsurfing Int'l Inc. v. AMF, Inc.*,
 782 F.2d 995 (Fed. Cir. 1986)..............................................................................28

Statutes

35 U.S.C. § 282..................................................................................................9

35 U.S.C. § 283..................................................................................................8

## SUMMARY OF ARGUMENT

Symbol develops and markets innovative, high-performance products, including a wide range of handheld mobile computers. Janam is a company founded by former high-level Symbol executives intimately familiar with Symbol's patented technology, channels of distribution, and marketing of its handheld mobile computers. Janam recently released to market the XM-60, an alternative to Symbol's products, but at rock-bottom prices. The fact that Janam is undercutting Symbol's prices would not, in and of itself, be so objectionable but for the fact that Janam's XM-60 possesses features already captured by Symbol's patents. By misappropriating Symbol's patented technology, Janam is able to substantially undercut Symbol's prices by as much as 50%. But unlike Symbol, Janam is no innovator. Janam can afford to offer its products at heavily discounted prices because it has none of the overhead that Symbol incurred to develop its patented technology and that Symbol continually feeds back into its R&D. To compete against Janam, a clear and unambiguous infringer of Symbol's patented technology, Symbol is now faced with an imminent and unacceptable proposition – to severely slash the prices of its handheld mobile computer product lines, thereby losing tens of millions of dollars in revenue. Given that such price erosion is likely irreversible, a preliminary injunction is the only remedy that will prevent Symbol from suffering irreparable harm.

For reasons further elaborated below, a preliminary injunction against Janam is warranted:

- Given the clear and unambiguous infringement of Symbol's '969, '366, and '821 Patents, there is a substantial likelihood of success on the merits. Simply stated, Janam has misappropriated Symbol's patented technology by incorporating three features in its Windows OS-based handheld mobile computers: backup battery with a boost circuit, an Internet web browser enabling a user to access remote software applications, and multiple wireless radios.

- There is also substantial likelihood of success on the merits because Symbol's patents are presumed valid. Moreover, the nonobviousness of the patented

features is evidenced by the substantial commercial success of Symbol's own products that incorporate these now-standard features and the fact that Janam markets those very same features for its infringing products.

- Taking advantage of their prior positions as high-level executives at Symbol, the Janam founders have made rapid inroads in the handheld mobile computer market with minimal overhead. Janam's founders possess intimate knowledge of Symbol's channels of distribution and have used that knowledge to their immediate advantage. Thus, soon after the company's founding, Janam signed on with major distributors that gave Janam substantial market reach (while maintaining a small, in-house sales force), as well as instantaneous market credibility.

- Symbol is not contesting Janam's entry into the Palm OS-based handheld mobile computer business. Janam's release of Palm OS-based handhelds was made with Symbol's full knowledge filled a niche left open by Symbol's announced departure from that field in 2006 so that Symbol could focus on its Windows OS-based line. However, Symbol will not and cannot abide Janam's recent introduction of infringing Windows OS-based products that impermissibly practice Symbol's patented technology.

- If a preliminary injunction is not granted, Symbol's Windows OS-based handheld mobile computer business will suffer irreparable harm due to price erosion, lost revenues, lost market share, and lost profits. Unburdened by Symbol's overhead that is earmarked for its substantial research, development, sales and marketing efforts, Janam is able to offer its Windows OS-based handheld mobile computers at a substantially lower price than Symbol's competing products.

- Obviously, price is a critical factor in the customer's determination of which product(s) to select for its enterprise when the competing devices share similar features. To compete against Janam's Windows OS-based handheld mobile computers, Symbol faces an unacceptable position -- drop its prices in order to compete against a company that has misappropriated its patented technology. Such price erosion, once granted to customers and distributors, cannot be recaptured. Moreover, the projected impact of Janam's entry could be substantial, easily amounting to tens of millions of dollars of lost revenue for the first year alone.

- The balance of hardships tips in Symbol's favor. Any hardship that Janam may suffer due to lost business pales in comparison to the hardship Symbol will suffer if Janam is permitted to continue infringing Symbol's patents. And Janam will remain free to market its Palm OS–based devices, as it has done since its founding; to the extent feasible, Janam will also remain free to market a Windows OS–based device that is stripped of Symbol's patented technology.

2

- The public interest favoring the enforcement of Symbol's valid and infringed patents strongly outweighs any public interest in having yet another supplier of handheld mobile computers on the market.

In short, compelling factors support entry of a preliminary injunction against Janam here.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 9, 2008, Symbol Technologies, Inc. ("Symbol") filed suit against Janam Technologies LLC alleging infringement of three of Symbol's patents, U.S. Patent No. 6,714,969 (the "'969 Patent"), U.S. Patent No. 5,835,366 (the "'366 Patent") and U.S. Patent No. 5,334,821 (the "'821 Patent") (collectively, the "patents-in-suit"). Janam's registered agent in Delaware was served on June 10, 2008. Janam has yet to file an Answer or otherwise respond to Symbol's Complaint.

## STATEMENT OF FACTS

The facts pertinent to this motion are set forth in the accompanying declarations of Brian Viscount, sworn to June 18, 2008 ("Viscount Decl.") and Boris Metlitsky, sworn to June 18, 2008 ("Metlitsky Decl."). For the convenience of the Court, we summarize those facts below.

## I.    Symbol and the Patents-In-Suit

Symbol develops and markets innovative, high-performance products, including a wide range of handheld mobile computers with wireless network and bar code scanning capabilities ("handheld mobile computers"). As the name suggests, handheld mobile computers support the processing of transactions by workers wherever they are, without having to go back and forth to a desktop computer.

For over two decades, Symbol and its subsidiaries have been leading innovators in handheld mobile computers, holding basic patents in the field. In 2000, Symbol was awarded the National Medal of Technology, the nation's highest honor for technological innovation. At the

time, Symbol was only the 11th corporate recipient in the 20-year history of the Award.  The

Award was granted to Symbol "[f]or creating the global market for laser bar code scanning and

for technology innovation and practical application of mobile computing and wireless local area

network technologies." Viscount Decl., ¶5, Ex. B.

In short, Symbol is an innovator, and such technological innovations are implicated in

this patent infringement suit.  Symbol is the owner by assignment of the '969, '366, and '821

patents-in-suit.

### A.      U.S. Patent No. 6,714,969 Claims the Internet Web Browser Feature

U.S. Patent No. 6,714,969 (the " '969 Patent") is entitled "Mobile Terminal With

Integrated Host Application Software" and issued March 30, 2004.  The invention of the '969

Patent captures an important feature in handheld mobile computers – an Internet web browser

that can generate a user interface for remote software applications without the need for such

software to be installed on the handheld.

The '969 Patent fulfilled a long-felt need for a handheld mobile computer that could

respond to the ever-changing software application needs of an organization.  *See* Clements Decl.,

Ex. D, '969 Patent at Col. 2, ll. 8-18.  Prior handheld mobile computers accessed software that

was saved locally on the handheld; given limited storage, prior handheld mobile computers could

only handle a limited number of software applications that were expensive and difficult to

modify.

The Internet web browser feature captured by the '969 Patent is now widely-considered

to be a standard feature of a handheld mobile computer; customers like to access software

applications on demand through a wireless connection. Viscount Decl., ¶9.  In this way, workers

can be anywhere (e.g., at a remote location or on the sales floor) and yet still access in-office or

desktop applications.

**B.    U.S. Patent No. 5,835,366 Claims the Backup Battery with Boost Circuit Feature**

U.S. Patent No. 5,835,366 ("the '366 Patent") is entitled "Secondary Battery Boost Circuit" and issued November 10, 1998.  The invention of the '366 Patent is a particular type of secondary battery system that is an important feature in handheld mobile computers because it provides a safeguard against losing valuable data when the primary battery runs out of power and a handheld mobile computer shuts down.  This backup battery feature is important to customers because they know that valuable data will not be lost.  Viscount Decl., ¶8.

Although other secondary battery systems were known prior to the invention of the '366 Patent,  *see* col. 1, ll. 48-57, the '366 Patent solved the long-felt need for a handheld mobile computer with a backup battery that had a reduced size and weight; as noted by the '366 Patent, "these factors are critical to the overall success" of handheld mobile computers.  *See* Clements Decl., Ex. B, '366 Patent, col. 1, l. 58 – Col. 2, l. 2.  The '366 Patent provided a innovative solution to this problem: a battery boost circuit that increases the power of the secondary battery so that the secondary battery can be small but sufficiently powerful to run the shutdown routine that ensures no loss of valuable data.

**C.    U.S. Patent No. 5,334,821 Claims the Dual Wireless Radio Feature**

U.S. Patent No. 5,334,821 ("the '821 Patent") is entitled "Portable Point of Sale Terminal" and issued August 2, 1994.  The invention of the '821 Patent is a portable hand-held point of sale terminal that can exchange data by way of two distinct wireless networks (*e.g.*, via Wi-Fi local area networks and Bluetooth personal area networks) without interference.  By having two distinct wireless radios, the '821 Patent, *see* Clements Decl., Ex. C, '821 Patent, col. 1, ll. 26-37, fulfilled the long-felt need for wireless point of sale terminals that could be portable

(*e.g.*, with sales outside the retail store or throughout the retail store floor), and also connect to local devices.

The dual wireless radio feature captured by the '821 Patent is now widely-considered to be a standard feature of a handheld mobile computer; simply stated, having one wireless radio is just not enough because we are living in a world which is increasingly cable-free and with multiple wireless network options. Viscount Decl., ¶10.

## II.     Janam and the Infringing Devices

Janam sells Palm operating system ("Palm OS") and Windows OS-based handheld mobile computers in the United States with wireless network and bar code scanning capabilities. Viscount Decl., ¶17. The Janam founders, Ron Goldman and Harry Lerner, are former Symbol Technologies executives who were employed by Symbol through the 1990s and 2000s. Viscount Decl., ¶17. During their many years with Symbol, Janam's founders witnessed first-hand Symbol's innovations in the handheld mobile computer field and gained extensive and intimate knowledge of Symbol's products and patents. Viscount Decl., ¶19.

By 2005, it was very clear that the Microsoft's Windows operating system was becoming the standard platform in the industry and the Palm OS-based handheld mobile computer market would continue to shrink. Metlitsky Decl., ¶3; Viscount Decl., ¶16. Thus, Symbol made the internal decision to exit the Palm OS-based area of handheld mobile computing. Metlitsky Decl., ¶3; Viscount Decl., ¶16. By fall of 2006, Symbol announced that it would be terminating its Palm OS–based product line and focusing on Windows OS-based products instead. Metlitsky Decl., ¶3; Viscount Decl., ¶16.

After leaving Symbol in late 2005, the Janam founders informed Symbol's Vice President of Enterprise Mobility, Boris Metlitsky, in late 2006 that they wanted to fill the void created by Symbol's marketing decision. In short, Janam intended to start a business that would

supply Palm OS-based handheld mobile computers. Metlitsky Decl., ¶5. Symbol considered the

entry of Janam into the niche left by Symbol to be a "win-win" situation for Janam and for

Symbol. Metlitsky Decl., ¶6. In essence, Janam ensured that Symbol would not leave any of its

Palm OS-based customers stranded while Janam would have an immediate opportunity to fill a

niche exited by Symbol.

As a direct result of their prior work experience at Symbol, the Janam founders have

made rapid inroads into the handheld mobile computer world with minimal overhead. In

particular, shortly after founding Janam, Goldman and Lerner reached distribution agreements in

early 2007 for their Palm OS-based devices with two leading distributors of handheld mobile

computers, ScanSource and BlueStar. Viscount Decl., ¶21. Signing on with these leading

distributors not only gave Janam instant credibility in the market but also allowed Janam's

limited product line to gain extensive market exposure and reach. Viscount Decl., ¶22.

In early 2008, however, Janam shifted its business focus and recently announced the

introduction of a Windows OS-based handheld mobile computer to its product line, which was

dubbed the Janam XM-60 Series. Earlier this year, both BlueStar and ScanSource became

distributors of Janam's XM-60 Windows OS-based product. Viscount Decl., ¶23.

As set forth in the accompanying declaration of Symbol's expert, Ken Clements, sworn

to June 17, 2008 ("Clements Decl."), Janam's Windows OS-based product misappropriates

Symbol's patented technology and practices the inventions of Symbol's '969, '366, and '821

Patents. Janam emphasizes in its own marketing materials that the XM-60 includes two wireless

radios, an Internet web browser that can interface with remote software applications, and a

backup battery system which analysis shows uses the patented battery boost circuit. Clements

Decl., ¶41-42, Ex. E. The XM-60 competes with Symbol's current lines of Windows OS-based

handheld mobile computers, including but not limited to Symbol's MC50, MC70, MC3000, MC9000 and PPT8800 product lines.  Viscount Decl., ¶31.

## ARGUMENT

The purpose of a preliminary injunction in a patent case is to preserve the status quo pending final determination of the litigation.  *See Belgium v. U.S.*, 452 F.3d 1289, 1297 (Fed. Cir. 2006).  A movant is entitled to a preliminary injunction in a patent infringement case pursuant to 35 U.S.C. § 283 when it demonstrates four factors: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the public interest favors injunctive relief.  *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (affirming preliminary injunctive relief against an alleged infringer when movant satisfied all four factors).  For the reasons outlined below, Symbol submits that it satisfies the requirements for preliminary injunctive relief.

## I.  Symbol Is Likely to Be Successful on the Merits of Its Patent Infringement Claims Against Janam

To show a likelihood of success on the merits, a patentee must demonstrate "in light of the presumptions and burdens that will inhere at trial on the merits . . . that [the alleged infringer's] product infringes the [patent] and that it will withstand [challenges to] the validity and enforceability of the [patent]." *Sanofi-Synthelabo*, 470 F.3d at 1374 (quotations omitted).  In this case, Janam clearly infringes at least independent claim 1 of each of the patents-in-suit.  Indeed, the infringement is evidenced by Janam's own public disclosures and Mr. Clements inspection of the Janam device.[1]

---

[1] Janam infringes a number of claims for each of the patents-in-suit.  *See* Clements Declaration, submitted in support of Symbol's Motion for Preliminary Injunction.  For the sake of efficiency, this memorandum only discusses Janam's infringement of claim 1 for each of the patents.

A side-by-side comparison of Janam's XM-60 device and Symbol's PPT8800, MC 70 and MC50 show obvious similarities in outward appearance.



In addition, the patents-in-suit are likely to withstand a validity or unenforceability challenge.  All patents are presumed valid.  35 U.S.C. § 282; *Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).  And given the lack of any notable prior art, *see* Clements Decl., ¶ 22, 33, 47, and considering secondary considerations of nonobviousness such as the commercial success of Symbol's own products, the patents-in-suit are likely to be upheld.

A.      **The Law of Patent Infringement**

A determination of patent infringement is a two-step process.  First the court must construe the claims.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed. Cir.

1996). The Courts look first to the intrinsic record, which includes the language of the claims, the specification and the prosecution history before the patent office. *See Vanderlande Industries Nederland BV v. I.T.C.*, 366 F.3d 1311, 1318 (Fed. Cir. 2004); *Vitronics*, 90 F.3d at 1582; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Absent any inconsistencies in the intrinsic record, claim terms are generally given their ordinary and customary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quotations omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313 (citations omitted).

After the claims have been properly construed, they are compared to the accused device to determine, as a matter of fact, whether all of the claim limitations are present, either literally or under the doctrine of equivalents. *Metabolite Labs., Inc. v. Lab. Corp. of America Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004); *see also See Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). To establish literal infringement, every limitation in a claim must be found in the accused device. *See Graver Tank & Mfg. Co. v. Linde Air Products Co.*, 339 U.S. 605, 607 (1950) ("In determining whether an accused device or composition infringes a valid patent, resort must be had in the first instance to the words of the claim. If accused matter falls clearly within the claim, infringement is made out and that is the end of it."). A device that does not literally infringe a patent can still infringe under the doctrine of equivalents if one of ordinary skill in the art would understand the difference between the device and the patented invention to be insubstantial. *Hughes Aircraft Co. v. U.S.*, 717 F.2d 1351, 1366 (Fed. Cir. 1983). The analysis focuses on whether the accused device performs substantially the same function in

substantially the same way to achieve substantially the same result. *AquaTex Indus., Inc. v.*

*Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (citing *Graver Tank*, 339 U.S. at 608

(1950).)

    **B.**    **Janam Infringes U.S. Patent No. 6,714,969**

        **1.**    **Claim Construction**

Claim 1 of the '969 Patent provides:

> 1. A wireless user-held network terminal for accessing, displaying, and entering data on a computer network, the terminal comprising:
>
> a processor and associated memory;
>
> a visual display;
>
> a keypad;
>
> a radio transmitter and receiver configured to establish wireless communication between the terminal and the computer network;
>
> communications engine software for controlling communication between the wireless terminal and the computer network; and
>
> parsing software for providing a user interface on the display by parsing script received from the network, whereby a multiplicity of different user interfaces may be provided without installing new software on the wireless terminal.

Clements Decl., Ex. D, '969 Patent, col. 24, lines 27-44.

    The claim terms in claim 1 of the '969 Patent are straight forward and unambiguous, and

either have their plain and ordinary meaning or are defined and used unambiguously in the

patent. As such, the Court should construe the terms in accordance with their ordinary and

customary meaning and usage in the patent. *Phillips*, 415 F.3d at 1312.

### 2.    Janam's XM Series Literally Infringes Claim 1 of the '969 Patent

Since the claims of the '969 Patent are clear and unambiguous when construed by their plain meaning, the next step is to compare the properly construed claims with the accused product to determine whether there is infringement.[2]

Janam's website provides detailed product specifications and screenshots of the XM-60 that demonstrate literal infringement of all the limitations of claim 1:

- **The XM-60 uses a processor with associated memory**

The XM-60 product specifications, reproduced in part below, describe a Freescale[TM] MX21-266MHz "processor" with 64 MB SDRAM and 64MB NAND associated memory.

## XM60 Series Specifications

| TECHNICAL | |
|---|---|
| Operating System | Microsoft® Windows® CE 5.0 |
| Processor | Freescale™ MX21-266MHz |
| Memory | 64MB SDRAM |
| | 64MB NAND |

(Clements Decl., ¶46, Ex. E and Ex. N at 1);

- **The XM-60 has a display and keypad**

The XM-60 product specifications, reproduced in part below, describe a visual "display" with dimensions 2.17" wide x 2.95" long (55.0mm x 75.0mm) with the capability to display 262 thousand colors TFT QVGA (240 x 320 resolution). The specifications also describe a backlit numeric "keypad."

---

[2] Ken Clements, an independent consultant with extensive experience in the area of mobile computing technology, has analyzed, on an element-by-element basis, Janam's XM-60 Series hand-held terminal against the asserted claims of each patent-in-suit. Clements Decl., ¶5. Mr. Clements notes that Janam's own website, www.janam.com, discloses features and components in the XM-60 series that are covered by the claims in the patents-in-suit. Clements Decl., ¶¶15-20, 25-29, 39. But Mr. Clements has also inspected and operated Janam's XM-60 first hand in order to perform an analysis of the capabilities, feature set and components of the XM-60 product. Clements Decl., ¶¶13, 30, 42.

## XM60 Series Specifications

| PHYSICAL | |
|---|---|
| Dimensions | 1.20" H x 3.11" W x 5.75" L / 30.5mm H x 79mm W x 146mm L |
| Weight | 9.88oz / 280g |
| Keypad | Backlit numeric keypad |
| Display Size | 2.17" W x 2.95" L / 55.0mm W x 75.0mm L |
| Display Type | 262K colors TFT QVGA (240x320) |

(Clements Decl., ¶24, Ex. E and Ex. N at 1);

- **The XM-60 has a wireless radio transmitter and receiver with software to connect the XM-60 to a network**

The XM-60 product specifications, reproduced in part below, describe two wireless radios (i.e. WLAN IEEE 802.11b and WPAN Bluetooth), both of which require software to connect the XM-60 to a wireless network.

## XM60 Series Specifications

| DATA COMMUNICATION | |
|---|---|
| IrDA | Standard v1.2 (up to 115,200bps) |
| USB | v1.1 client (up to 12Mbps), OTG support |
| WPAN | Bluetooth v1.2 |
| WLAN | IEEE 802.11b radio, 2.4GHz |

(Clements Decl., ¶28, 40, Ex. E and Ex. N at 1).

- **The XM-60 includes parsing software (as part of an Internet web browser) for providing user interfaces to software applications without the need for installing such software on the handheld**

Screenshots of the XM-60 interface, reproduced below, show networking software and Internet Explorer web-browsing software. This software will parse downloaded web page data to provide different user interfaces for remote software applications without the need to install such software on the handheld.

 

Clements Decl., ¶¶ 34-38, 41-42, Ex. N at 1-2.

Accordingly, Janam's XM-60 portable computing device infringes all the limitations of at least claim 1 of the '969 Patent. Clements Decl., ¶¶39-46, Ex. N at 1-2.

**C.    Janam Infringes Claim 1 of U.S. Patent No. 5,334,821**

**1.    Claim Construction**

Claim 1 of the '821 Patent provides:

1. A portable point of sale terminal comprising:

a hand-carryable housing having a front face;

a keyboard and a display mounted on the front face of the housing;

a power source located within the housing;

a first electromagnetic transceiver located within the housing for transmitting and receiving data over the air to and from a host computer; and

a second electromagnetic transceiver located within the housing, for transmitting and receiving data over the air to and from a remote input-output device

The claim terms in claim 1 of the '821 Patent are straight forward and unambiguous, and either have their plain and ordinary meaning or are defined and used unambiguously in the patent. As such, the Court should construe the terms in accordance with their ordinary and customary meaning and usage in the patent. *Phillips*, 415 F.3d at 1312 .

### 2.    Janam's XM Series Literally Infringes Claim 1 of the '821 Patent

Screenshots, graphic and product specifications of the XM-60 portable computing device, all taken from Janam's website, www.janam.com, show that Janam's XM-60 infringes at least claim 1 of the '821 Patent:

- **The XM-60 is a portable point of sale terminal with a hand-carryable housing that includes a keyboard and display mounted on the front face of the housing**

The Janam XM-60 can be used as a portable point of sale terminal; indeed, literature on Janam's web site indicates that Janam's devices are for use in "retail" applications. Clements Decl., ¶ 25, Exhibit L. In addition to the XM-60 bar code reader, Janam also offers a magnetic stripe reader as an accessory, to provide "on-the-go card reading capability," which is common in point-of-sale terminals.

A picture of the magnetic stripe reader taken from Janam's website

(http://www.janam.com/handheld-accessories.php) is reproduced below.



Clements Decl., ¶ 25, Exhibit M.

A picture of the XM-60 located at http://www.janam.com/XM-60-handheld.php on

Janam's website, reproduced below, also shows that it is portable device with a hand-carryable

housing with a keyboard and display mounted on the front face of the housing.



Clements Decl., ¶ 26.

- **The XM-60 has a power source located within the housing**

A graphic of the XM-60 taken from the XM-60 User Manual, reproduced below, shows

an inner battery compartment for a replaceable battery. A battery constitutes a "power source."



Clements Decl., ¶¶26, Ex. F at 1-4; Ex. K at 2.

- **The XM-60 has two separate transceivers (e.g. wireless radios) within the housing**

The XM-60 product specifications, reproduced in part below, describe two wireless

radios (i.e. WLAN IEEE 802.11b and WPAN Bluetooth radios) located within the housing for

transmitting and receiving data over the air to and from a host computer (i.e., remote input/output

device).

## XM60 Series Specifications

**DATA COMMUNICATION**

| | |
|---|---|
| IrDA | Standard v1.2 (up to 115,200bps) |
| USB | v1.1 client (up to 12Mbps), OTG support |
| WPAN | Bluetooth v1.2 |
| WLAN | IEEE 802.11b radio, 2.4GHz |

Accordingly, Janam's XM-60 Series device infringes all the limitations of at least claim 1

of the '821 Patent. Clements Decl., ¶¶ 27-32, Ex. E; Ex. K at 3.

D.     **Janam Infringes Claim 1 of U.S. Patent No. 5,835,366**

1.     **Claim Construction**

Claim 1 of the '366 Patent provides:

> 1. A secondary battery boost system, comprising:
>
> a primary battery, the primary battery operative as a primary portable power supply for a computing device;
>
> a secondary battery, the secondary battery operative as a backup portable power supply for the computing device; and
>
> a boost circuit operative to increase the power output of the secondary battery applied to the computing device.

Clements Decl., ¶9, Ex. B, '366 Patent, col. 11, 14-22. As with the other patents-in-suit, the claim terms in claim 1 of the '366 Patent are straight forward and unambiguous, and either have their plain and ordinary meaning or are defined and used unambiguously in the patent. As such, the Court should construe the terms in accordance with their ordinary and customary meaning and usage in the patent. *Phillips*, 415 F.3d at 1312 .

2.     **Janam's XM Series Literally Infringes Claim 1 of the '366 Patent**

Product specifications and a graphic of the XM-60 portable computing device, both taken form Janam's website, www.janam.com, and Mr. Clements' analysis of an XM-60 show that Janam's XM-60 infringes at least claim 1 of the '821 Patent:

- **The XM-60 has a primary portable power supply**

The XM-60 product specifications describe a "[s]wappable 3.7V 1880 mAh rechargeable Li-ion" battery as the primary power source.

A picture and graphic taken from Janam's website, reproduced below, illustrate the primary battery.



Clements Decl., ¶14.

- **The XM-60 has a secondary battery acting as a backup portable power supply**

The XM-60 product specifications describe a "rechargeable 20 mAh Ni-Mh" backup battery for use as a portable backup power supply. Clements Decl., ¶15. The backup battery in the XM-60 device is made of two battery "cells" connected together. A picture taken of the circuit board shows the two backup battery cells:



Clements Decl., ¶15.

- **The XM-60 contains a boost circuit to increase the power of the secondary backup battery**

Mr. Clements' analysis of the XM-60 shows that the device contains a Torex XC6367B step-up voltage regulator chip and associated circuitry (i.e., "boost circuit") to boost the approximately 2-3 volts of the backup battery (depending on its charge) to approximately 3.5 volts, which is then provided to the XM-60. A picture of the boost circuit in the XM-60 is shown below:



Accordingly, Janam's XM-60 portable computing device infringes all the limitations of at least claim 1 of the '366 Patent. Clements Decl., ¶¶16-21.

**E.    Janam's XM Series Infringes The Patents-In-Suit Under the Doctrine Of Equivalents**

Even if Janam's XM-60 mobile computing device did not literally infringe all the limitations of the patents-in-suit, it would infringe under the doctrine of equivalents because any differences between the XM-60 and the limitations in the claims are insubstantial. Clements Decl., ¶21.

**F.    Symbol is Likely to Succeed on Any Challenge to the Validity or Enforceability of the Patents-In-Suit**

To establish likelihood of success on the merits, Symbol must demonstrate that Janam will likely fail to meet its burden at trial on a claim alleging invalidity or unenforceability of the patents-in-suit. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363, 1367-68 (Fed. Cir. 2001) (affirming the grant of a preliminary injunction when the patentee succeeded in demonstrating the likelihood of infringement and the likelihood of defeating a claim alleging invalidity of the patent).

Proving invalidity is a heavy burden that must be established by clear and convincing evidence at the trial stage. *See Purdue Pharma*, 237 F.3d at 1365. At the preliminary injunction stage, the movant bears the burden of demonstrating that it is likely to prevail on challenge to the validity or enforceability of the patent(s) posed by the accused infringer. *Id.* However, every patent is presumed valid at every stage of the litigation, and if Janam fails to offer any persuasive evidence of invalidity, "the very existence of the patent satisfies [the preliminary injunction movant's] burden on validity." *Id.* at 1365, 1375 (citation omitted).

In this case, Janam will not be able to meet its burden at trial by clear and convincing evidence that the patents-in-suit are invalid. Although some of the claim limitations were available in the prior art (e.g., a keyboard or a display in the case of the '821 Patent), there is nothing in the prior art that encompasses *all* the claim limitations for each of the claims for each respective patent. Indeed, the U.S. patent office came to the same conclusion, allowing the claims for each of the patents-in-suit after a thorough review of the prior art in the field of the invention.

21

1.    **Secondary Considerations of Non-Obviousness – Such as Long-Felt Need and Commercial Success – Support Validity of the Patents-in-Suit**

Two factors are proof positive of the nonobviousness of Symbol's inventions. First, as detailed above, each of the patents-in-suit fulfilled a long-felt, unmet need. Second, Symbol's handheld mobile computers adopt the patented features at issue (i.e. Internet web browser, dual wireless radios, and backup boost battery), and these patented features account, in part, for the commercial success of Symbol's products.

Because of Symbol's commitment to offering handheld mobile computers with new design features that are attractive to its customers, Symbol's handheld mobile computers have been a tremendous commercial success, accruing over $3 billion dollars in North America/Latin America sales since 2002 alone. Viscount Decl., ¶5.

In particular, Symbol's commercial success can be attributed, at least in part, to the patented features at issue in this case (i.e., secondary battery with boost circuit, dual wireless radios and an Internet web browser that allows access to remote software applications). Indeed, at least two of these features were not only rapidly accepted but also have now become standard features in the majority of today's handheld mobile computers; simply stated, a handheld mobile computer without dual wireless radios and an Internet web browser capable of interfacing with remote software applications would not be able to compete effectively in today's mobile computing market. Viscount Decl., ¶12.

Cognizant of this fact, Symbol touts the patented features at issue in its marketing materials for its handheld mobile computers. Viscount Decl., ¶13. Intermec, a leading

competitor in the handheld mobile computer arena (and licensee of the patents-in-suit[3]), is to the

same effect.  Viscount Decl., ¶15.

Most significantly, Janam stresses these very same patented features in its own marketing

materials for the accused device, Janam's Windows OS-based handheld mobile computer (i.e.

XM-60).  Viscount Decl., ¶14.  *See Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d

1573, 1579 (Fed. Cir. 1997) ("The prominence of the patented technology in [the alleged

infringer's] advertising creates an inference that links the [patented] invention to this success.").

Thus, Janam's own advertising materials serve as an admission that the patented features are

necessary for a competitive and commercially successful Windows OS-based device.

## II.    Symbol Will Be Irreparably Harmed by Janam's Continued Patent Infringement Unless Symbol Is Granted Preliminary Injunctive Relief

To obtain preliminary injunctive relief, Symbol must demonstrate that it will be

irreparably harmed unless Janam is enjoined from further patent infringement.  *See Abbott Labs.*

*v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1213 (Fed. Cir. 2007).

As an initial matter, Symbol is entitled to a rebuttable presumption of irreparable harm

because of its likelihood of success on the merits of its patent infringement claim against Janam.

*See Purdue Pharma*, 237 F.3d at 1367 (citing *Polymer Techs.*, Inc. v. Bridwell, 103 F.3d 970,

973 (Fed. Cir. 1996)); *see also Sanofi-Synthelabo*, 470 F.3d at 1381; *Oakley, Inc. v. Sunglass Hut*

*Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003) (finding a presumption of irreparable harm even

when the merits issues were close); *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d

---

[3] Intermec's license is pursuant to a broad cross-license that resulted from multiple patent infringement cases by the parties against each other, with each party providing IP value to the other.

1553, 1565-66 (Fed. Cir. 1996) (finding a presumption of irreparable harm due to lost revenues and goodwill and forced reduction in research and development activities).

**A.    Due to Market Entry of Janam's Infringing Windows OS-Based Devices, Symbol Faces Irreparable Price Erosion**

If a preliminary injunction is not granted, Symbol's Windows OS-based handheld mobile computer business will suffer irreparable harm due to price erosion, lost market share, lost revenues, and lost profits.  To make matters worse, since Janam is a small start-up company, Symbol may not be able to recover damages from it for patent infringement.  Yet, by free-riding on Symbol's patented technology and taking advantage of its founders' prior high executive positions at Symbol and intimate knowledge of Symbol's channels of distribution, Janam is unburdened by Symbol's overhead that preserves its substantial research, development, sales and marketing efforts; likewise, Janam is able to avoid much of the initial costs normally associated with developing and selling a new product in this marketplace.  In this way, Janam is able to offer its Windows OS-based handheld mobile computers at rock-bottom prices compared to Symbol's competing products.  Thus, in order to compete, Symbol faces an unacceptable position -- drop its prices in order to compete against a company that has misappropriated its patented technology.  Such price erosion, once granted to customers and distributors, cannot be recaptured and, based on a conservative estimate, easily amounts to millions of dollars in lost Symbol revenue and profits.  A preliminary injunction is the only remedy that will prevent Symbol from suffering such irreparable harm.

It is well-settled in Federal Circuit case law that price erosion is a sufficient basis for a finding of irreparable harm.  *See, e.g., Sanofi-Synthelabo*, 470 F.3d at 1382 (finding irreparable harm sufficient to grant a preliminary injunction where the movant demonstrated through the declaration of the company's executive that it would suffer irreversible price erosion in light of

evidence that movant has been forced to offer discounted rates and price concessions to third-parties); *see also Purdue Pharma*, 237 F.3d at 1368 (finding no clear error in the district court's grant of a preliminary injunction based on price erosion and loss of market position being likely in view of a competitor's pricing scheme).

There is no question that Janam's rock-bottom prices for its infringing products will lead to price erosion of Symbol's handheld mobile computers. Given its reduced overhead, Janam is able to aggressively price its XM-60 model – in fact, it is able to substantially *under*price Symbol's competing devices. Symbol's account managers in the field report back that Janam is pricing its XM-60 at approximately $500 per device. Viscount Decl., ¶26. This price is substantially lower than the price that Symbol is able to offer its customers and distributors for competing Symbol handheld mobile computers. Viscount Decl., ¶26.

Obviously, price is a critical factor in the customer's determination of which product(s) to select for its enterprise, where the competing devices share similar features. Janam's $500 price is roughly half the price of some of Symbol's Windows OS-based handheld mobile computers. At that "2 for 1" price, a customer has a strong incentive to purchase Janam's product instead of Symbol's competing products. Viscount Decl., ¶27. Likewise, a distributor that takes Janam's price and then marks that price up for a sale direct to an end user anticipates making a larger profit per sale of a Janam device compared to a Symbol device. Thus, even if a distributor is distributing both Symbol and Janam devices (as ScanSource and BlueStar now do), there is much more incentive for the distributor to aggressively push a sale of a Janam device than one of Symbol's. Viscount Decl., ¶28.

At present, the difference between Symbol's asking sales price and Janam's asking sales price is so substantial that Symbol will need to drop its asking sales price by at least 25% --

perhaps even more – in order to close sales. Viscount Decl., ¶29. Such price erosion by Symbol

would be a serious concession to customers and distributors - once lost it cannot be easily

recaptured. Moreover, this price erosion impacts Symbol's entire handheld mobile computer

product line, extending from lightweight PDA style devices to ruggedized industrial class

devices. Viscount Decl., ¶30.[4]

Based on a conservative analysis, the projected impact of Janam's entry on Symbol's

handheld mobile computer business is substantial, easily amounting to millions in dollars of lost

revenue and profits. Thus, estimating that Janam would be able to take a mere 2% of Symbol's

North America/Latin America market share in handheld mobile computers with its rock-bottom

prices, Symbol's projected lost revenue due to Janam's market entry into the Windows OS-based

space exceeds $7 million for the first year alone. Viscount Decl., ¶32. Likewise, should

Symbol be forced to drop its asking sales price by 25% in order to successfully close sales

competing against Janam's heavily discounted prices in just 30% of Symbol's North

America/Latin America market share, Symbol's projected lost revenue due to Janam's market

entry into the Windows OS-based space is almost $30 million for the first year alone. Viscount

Decl., ¶33. But Symbol needs this revenue in order to maintain its innovative research and

development efforts.

---

[4] For example, when Symbol's sales force pitches its product line directly to a large volume
customer, the sales force may pitch a solution that encompasses an industrial class device (such
as a MC3000) for a field worker and a lightweight PDA style device (such as the MC50) for a
manager. Janam's marketing of its XM-60 product at a substantially lower asking price
undermines that entire sale (*i.e.* both Symbol products) because Janam's organizational solution
is just one Windows-based product at a $500 asking price. In this way, market entry of Janam's
XM60 is presently pressuring accounts implicating both Symbol's industrial and PDA-style
products, including but not limited to the MC50, MC70, PPT8800, MC3000 and MC9000
products. Viscount Decl., ¶31.

It must be stressed that Symbol's projections are based on a *conservative* estimate of the impact of Janam's release of an infringing Windows OS-based product.  There is a strong likelihood that circumstances will deteriorate even more than outlined above if a preliminary injunction is not granted. Indeed, the rapid inroads that Janam has already made with minimal overhead into the handheld mobile computer market merely hints at the damage that Janam can do if not preliminary enjoined and able to continue with its Windows OS-based business up through trial.

Absent a preliminary injunction, should Symbol prevail at trial, it will simply be too late for Symbol to undo the harm due to Janam's release of an infringing Windows OS-based handheld mobile computer.  Janam's conversion of customers and distributors – and Symbol's necessary response of slashing its prices in order to stay competitive – will have impacted Symbol's business to such an extent that money and damages would be insufficient to compensate Symbol for an irreversible concession, that of price erosion.

In sum, given the substantial price erosion, lost revenues and lost profits that entry of Janam's infringing device will inflict on Symbol's handheld mobile computers, it is clear that Symbol will suffer irreparable harm unless Janam is preliminarily enjoined from infringing Symbol's patented technology.

**III.    The Balance of Hardships Tips In Favor of Symbol**

The third factor for preliminary injunctive relief, the balancing of the hardships suffered by the parties, strongly favors the issuance of a preliminary injunction here.  *See Sanofi-Synthelabo*, 470 F.3d at 1383.  Although it is not a prerequisite to awarding a preliminary injunction that a district court expressly find the balance of hardships tips in favor of the movant, a balancing in this instance would tip in favor of Symbol.  *See Hybritech Inc. v. Abbott Labs.*, 845 F.2d 1446, 1457-58 (Fed. Cir. 1988).

As a threshold matter, Symbol is not seeking to shut down Janam's business. To the contrary, Symbol was aware of Janam's entry with its Palm OS–based devices, and Symbol is not seeking to enjoin sales of such devices by Janam. Symbol is simply seeking to preserve the status quo. Janam sells products other than the XM-60 Series and from which it derives substantial revenue. If a preliminary injunction is granted, Janam's business in the Palm OS-based area of mobile computing terminals would continue unabated. Moreover, to the extent feasible, Janam will also remain free to market a Windows OS–based device, so long as it is free of Symbol's patented technology.

Moreover, as detailed above, Symbol faces immediate hardship – such as irreversible price erosion -- that cannot be compensated solely with monetary damages. Any hardship that Janam may suffer due to lost business pales in comparison to the hardship Symbol will suffer if Janam is permitted to continue infringing Symbol's patents. *See Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

Janam cannot reasonably complain about lost sales due to a preliminary injunction when each sale of Janam's Window-based products takes advantage of misappropriated Symbol's patented technology. Janam's free-riding on Symbol's patents is particularly egregious given that Janam entered the market for portable handheld terminals fully cognizant that Symbol has an extensive patent portfolio. Indeed, Ronald Goldman was a former in-house patent attorney at Symbol before making the move over to Janam. Viscount Decl., ¶18. Moreover, as proof positive that Janam is free-riding on Symbol's invention, Janam's marketing materials for its

Windows OS-based product tout the patented features claimed by the patents-in-suit.  Viscount

Decl., ¶14.

Accordingly, the balance of hardships tips in favor of granting a preliminary injunction.

**IV.    The Public Interest Favors Preliminary Injunctive Relief**

With respect to the fourth and final consideration of whether to enter a preliminary

injunction, the public interest favoring the enforcement of Symbol's valid and infringed patents

strongly outweighs any public interest in having yet another supplier of handheld mobile

computers.  *See PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996)

(acknowledging that while an injunction would deprive the public of one of the suppliers of the

product at issue, strong public policy favored the enforcement of patent rights); *see also*

*Hybritech*, 849 F.2d at 1458.  Just as they did before the entry of Janam's Windows OS-based

device, Symbol and other market players can easily meet the public's needs for handheld mobile

computers following the grant of a preliminary injunction.  Symbol alone has a full range of

products that presently compete against Janam's XM-60 -- removing Janam's XM-60 (a copy-cat

device that does not boast any innovative features compared to what is presently available) from

the market will not harm the public in any way.

Although consumers can buy Janam's XM-60 product at prices substantially lower than

Symbol's competing products, price savings alone, no matter how sizeable, cannot favor keeping

Janam's infringing product on the market.  *See Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998

F.2d 985, 991 (Fed. Cir. 1993) ("[A] lower priced product does not justify infringing a patent.

Were that to be a justification for patent infringement, most injunctions would be denied because

copiers universally price their products lower than innovators").  This is because Janam can only

offer its rock-bottom prices by misappropriating Symbol's patented technology.  But the public

interest in maintaining patents must trump the benefits of price savings in this instance; in sum, public interest strongly favors preliminary injunctive relief here.

## CONCLUSION

For all of the reasons set forth above, Symbol respectfully requests the entry of an order preliminarily enjoining Janam from the manufacture, sale, offer for sale, and use in the United States of the accused Windows OS-based handheld mobile computers.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL

Eric J. Lobenfeld
Ira J. Schaefer
Arlene L. Chow
Mitchell S. Feller
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

Dated: June 18, 2008
870306 / 33146

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    P. O. Box 951
    Wilmington, Delaware 19801
    Tel: (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com

*Attorneys for Plaintiff
Symbol Technologies, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on June 18, 2008, the attached document was

electronically filed with the Clerk of the Court using CM/ECF.

I further certify that on June 18, 2008, the attached document was Federal Expressed to

the following person(s):

Janam Technologies, LLC
c/o National Registered Agents, Inc.
Registered Agent
160 Greentree Drive, Suite 101
Dover, DE  19904


I further certify that on June 19, 2008, the attached document will be Hand-Delivered to

the following person(s):

Janam Technologies, LLC
c/o National Registered Agents, Inc.
Registered Agent
160 Greentree Drive, Suite 101
Dover, DE  19904


By:   /s/ David E. Moore
     Richard L. Horwitz
     David E. Moore
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

870211 / 33146