IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SYMBOL TECHNOLOGIES, INC.           :
                                    :
            Plaintiff,              :
                                    :
    v.                              :    Civil Action No. 08-340-JJF
                                    :
JANAM TECHNOLOGIES LLC,             :
                                    :
            Defendant.              :

---

Arlene L. Chow, Esquire and Eric J. Lobenfeld, Esquire of HOGAN &
HARTSON, New York, New York.
Richard L. Horwitz, Esquire and David Ellis Moore, Esquire of
POTTER ANDERSON & CORROON LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Richard L. DeLucia, Esquire and John R. Kenny, Esquire of KENYON &
KENYON, LLP, New York, New York.
Steven J. Balick, Esquire; John G. Day, Esquire and Lauren E.
Maguire, Esquire of ASHBY & GEDDES, Wilimington, Delaware.

Attorneys for Defendant.

---

**MEMORANDUM OPINION**

March 3/ , 2009
Wilmington, Delaware

Farnan / District Judge.

Pending before the Court is Defendant's Objections (D.I. 150)
to the Magistrate Judge's Report and Recommendations (D.I. 133).
For the reasons discussed, the Report and Recommendations will be
adopted in part and overruled in part.

**I.   BACKGROUND**

On June 9, 2008, Plaintiff Symbol Technologies, Inc.
("Plaintiff") filed this patent infringement case, alleging
infringement of U.S. Patent Nos. 5,334,821 ("the '821 patent"),
5,835,366 ("the '366 patent"), and 6,714,969 ("the '969 patent") by
Defendant Janam Technologies LLC ("Defendant").  On June 18, 2008,
Plaintiff filed a Motion for Preliminary Injunction.  (D.I. 6.)
The Court referred this matter to Magistrate Judge Stark for a
report and recommendation regarding tentative constructions of
disputed patent claim terms in relation to the Motion.  (D.I. 122.)

The parties filed a Joint Claim Chart identifying the claim
terms in dispute.  (D.I. 68.)  The parties briefed their positions
on claim construction, and the Magistrate Judge conducted a Markman
hearing on October 30, 2008.  (See D.I. 120 (October 30, 2008
Hearing Transcript).)  The parties were able to agree that most of
the terms of the claims at issue did not need construction.[1]  On

---

[1] Several of the formerly disputed claim terms are no longer
in dispute.  Following the Markman hearing, the parties reached
agreement with respect to construction of three claim terms in
the '821 patent.  (D.I. 112)  Specifically, the parties agreed
that: (i) "data" is to be construed as "information associated
with a sales transaction;" (ii) "remote input-output device" is
to be construed as "a remote device through which information

December 1, 2008, the Magistrate Judge issued his Report and
Recommendations construing the remaining disputed claim terms.
(D.I. 133.)   The Magistrate Judge recommended the following
tentative constructions:[2]

1.   The term "a portable point of sale terminal" as used in
     Claim 9 of the '821 patent means "a portable computer
     terminal that is capable of handling a sales
     transaction."

2.   The term "electromagnetic transceiver" as used in Claim 9
     of the '821 patent means "electromagnetic transceiver."

3.   The term "power" as used in Claim 7 of the '366 patent
     means "voltage."

_____

associated with a sales transaction is input or output;" and
(iii) "host computer" is to be construed as "a remotely located
computer which provides information associated with a sales
transaction to the portable point of sale terminal and possesses
information associated with a sales transaction from the portable
point of sale terminal."   The Magistrate Judge recommended that
these agreed-upon constructions be adopted for purposes of
resolving the Motion. (D.I. 133 at 2, n.2.)

[2] In deciding a motion for preliminary injunction in a
patent infringement case, a court may issue tentative claim
constructions and may base its resolution of the preliminary
injunction upon those tentative constructions.   See Jack Guttman,
Inc. v. Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir.
2002).   "[A]ll findings of fact and conclusions of law at the
preliminary injunction stage are subject to change upon the
ultimate trial on the merits."   Id. (quotations omitted).

4.    The term "without installing new software on the wireless
      terminal" as used in Claims 22 and 25 of the '969 patent
      means "without installing an application program, other
      than the parsing software, to provide user interfaces."

Defendant filed objections to the Magistrate Judge's
preliminary construction of three claims terms: "a portable point
of sale terminal," "power," and "without installing new software on
the wireless terminal." (D.I. 150.)  Defendant contends that
different preliminary construction should be adopted by the Court
for purposes of deciding Plaintiff's Motion for Preliminary
Injunction.  Neither party objects to the Magistrate Judge's
recommended construction of "electromagnetic transceiver."

## II.  DISCUSSION

### A.  The '821 Patent - "A Portable Point of Sale Terminal"

After considering the parties' proposed constructions, the
Magistrate Judge recommended that the term "a portable point of
sale terminal," as used in Claim 9 of the '821 patent, should be
construed to mean "a portable computer terminal that is capable of
handling a sales transaction." (D.I. 133 at 7-11.)  For the reasons
set forth in the Report and Recommendations, the Court will adopt
this construction.

### B.  The '366 Patent - "Power"

After considering the parties' proposed constructions, the
Magistrate Judge recommended that the term "power," as used in

Claim 7 of the '366 patent, should be construed to mean "voltage." (D.I. 133 at 13-15.) For the reasons set forth below, the Court will overrule the recommended construction and will adopt Defendant's proposed construction. Specifically, for purposes of the Motion for Preliminary Injunction, the Court will construe the term "power" to mean "the rate at which energy is transferred, calculated by multiplying electric current times voltage."

Claim 7 of the '366 patent recites, in part:

7. A method for facilitating power shutdown protocol of a computing device, comprising the steps of:
     using a first cell as a primary portable power supply. . .
     using a secondary cell as a backup portable power supply. . . and
     using a boost circuit to increase the <u>power</u> of the secondary cell. . .
     wherein the secondary cell supplies power to the computing device upon a voltage of the first cell dropping below a predetermined value.

'366 patent at col. 11, ll. 42-53 (emphasis added).

With respect to Claim 7, the dispute between the parties primarily centers around whether "power" should be interpreted according to its ordinary, "textbook" definition or whether it should be interpreted according to a "colloquial" definition, proposed by Plaintiff. It is undisputed that, among those of ordinary skill in the art, the well-established, textbook definition of "power" is "voltage multiplied by current." (D.I. 133 at 14-15.) Plaintiff contends, however, that "power" also has a second, colloquial definition, which is simply "voltage." (D.I.

4

171 at 6.) This colloquial definition is contrary to the textbook
definition, because it does not account for current. More
precisely, the colloquial definition assumes that current is
constant.

Plaintiff contends that a person of ordinary skill in the art,
upon reading the specification of the '366 patent, would understand
that the patent embraces the colloquial definition of "power."
Specifically, Plaintiff contends that: 1) the specification does
not explicitly adopt the textbook definition of "power;" 2) the
specification uses the terms "power" and "voltage" loosely and
interchangeably when referring to the output of a battery; and 3)
the preferred embodiment described in the specification describes
boosting the power of a secondary battery only by boosting its
voltage, thus implying that current is constant.

For a claim term to be construed contrary to its ordinary
meaning, "a patentee must clearly express that intent in the
written description." Helmsderfer v. Bobrick Washroom Equipment,
Inc., 527 F.3d 1379, 1381-82 (Fed. Cir. 2008). Although Plaintiff
correctly notes that the specification does not explicitly adopt
the textbook definition of "power," the intrinsic record also does
not clearly reject this textbook definition. Rather, "[e]ven
[Plaintiff's] expert admitted that portions of the specification of
the '366 Patent use 'power' in its classic sense of 'voltage times
current.'" (D.I. 133 at 15 (citing D.I. 79, Exh. C at 25).)

5

The Court also does not agree with Plaintiff's contention that the patent uses the terms "power" and "voltage" loosely and interchangeably. The specification consistently uses "power" in the context of a "power supply" or "output power."[3] Importantly, the patent does not quantify "power" according to volts, the scientific unit for voltage. Measurements in volts in the patent appear in the context of "voltage."[4] At one point, the specification describes "a 5 volt power supply circuit and a 3 volt power supply circuit," but the same paragraph then clarifies that these circuits provide "a steady 5 volt DC [(direct current)] power" and "a steady 3 volt DC power." '366 patent at col. 7, ll. 19-34 (emphasis added). Thus, even where the specification uses volts in connection with a "power supply circuit," it describes the circuit's power output as a combination of both voltage and current. Additionally, the specification provides an example of a circuit for boosting "power output." Id. at col. 7, ll. 41-55. This circuit "produces an electro-magnetic field current (EMF) at a desired voltage level." Id. (emphasis added). This again fits the

---

[3] See, e.g., '366 patent at col. 2, ll. 5-20, 29, 37, 39, 55, 59; col. 9, ll. 14, 38-41; col. 10, ll. 2, 30-31 ("power supply," "power supply circuit," or "supplying power"); id. at col. 2, ll. 40, 62; col. 7, l. 44; col. 9, ll. 39-40; col. 10, ll. 13, 22, 31-32, 57-65 ("output power" or "power output").

[4] See, e.g., id. at col. 7, l. 40 ("voltage of approximately 3.6 volts"); col. 7, l. 54 ("voltage level (e.g., approximately 5.2 volts)"); col. 9, l. 37 ("voltage level of approximately 7.2 volts"); col. 10, ll. 8-9 ("voltage . . . falling below 5.4 volts"); col. 10, ll. 18-19 ("e.g., 5.2 volts; a voltage level"); col. 10, l. 39 ("voltage of 3.6 volts").

6

textbook definition of "power," which includes both voltage and current. Thus, the usage of "power" and "voltage" throughout the patent supports the conclusion that the patentees intended these terms to have different, though related, meanings.

Finally, the Court is not persuaded by Plaintiff's argument that the preferred embodiment, which describes increasing the power of a secondary cell only by increasing its voltage, should limit the interpretation of a circuit for increasing "power" in the claims. The preferred embodiment is an illustrative example, and "when claim language is broader than the preferred embodiment, it is well-settled that claims are not to be confined to that embodiment." DSW, Inc. v. Shoe Pavilion, Inc., 537 F.3d 1342, 1348 (Fed. Cir. 2008); see also Acumed LLC v. Stryker Corp., 483 F.3d 800, 807 (Fed. Cir. 2007) ("[In their claims, patentees] could have used the word 'perpendicular,' as they did in discussing their preferred embodiment. Instead, they chose a different term that implies a broader scope.") Moreover, the term "voltage" appears later in the same claim, indicating that the patentees intended the term "power" to have a meaning other than simply "voltage." See Helmsderfer, 527 F.3d at 1381-82 ("different claim terms are presumed to have different meanings").

Accordingly, the Court will overrule the recommended construction and will adopt Defendant's proposed construction. Specifically, for purposes of the Motion for Preliminary

7

Injunction, the Court will construe the term "power" to mean "the rate at which energy is transferred, calculated by multiplying electric current times voltage."

## C. The '969 Patent - "Without Installing New Software on the Wireless Terminal"

After considering the parties' proposed constructions, the Magistrate Judge recommended that the term "without installing new software on the wireless terminal," as used in Claim 16 of the '969 patent, should be construed to mean "without installing an application program, other than the parsing software, to provide user interfaces." (D.I. 133 at 15-18.) For the reasons set forth in the Report and Recommendations, the Court will adopt this construction.

## III. CONCLUSION

For the reasons discussed, the Court will adopt in part and overrule in part the Magistrate Judge's Report and Recommendations (D.I. 133) tentatively construing the disputed terms and/or phrases of the '821, '366, and '969 patents for purposes of deciding Plaintiff's Motion for Preliminary Injunction. An appropriate Order will be entered.